IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| MARLENE STAGGS | ) | |
| | ) | |
| v. | ) | No. 2:09-0097 |
| | ) | Judge Nixon/Bryant |
| SOCIAL SECURITY ADMINISTRATION | ) | |

To: The Honorable John T. Nixon, Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration"), through its Commissioner, denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits, as provided under Titles II and XVI of the Social Security Act ("the Act"). The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 14), to which defendant has responded (Docket Entry No. 16). Plaintiff has further filed a reply brief. (Docket Entry No. 17) Upon consideration of these papers and the transcript of the administrative record (Docket Entry Nos. 6 and 11),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be DENIED, and that the decision of the SSA be AFFIRMED.

### I. Introduction

Plaintiff filed her DIB and SSI applications on December 26, 2006, alleging

---

[1]Referenced hereinafter by page number(s) following the abbreviation "Tr."

disability as of January 16, 2006 due to carpal tunnel and neck problems, and resulting pain and weakness. (Tr. 90, 93, 116) These applications were denied upon initial review by the state agency, and again upon reconsideration. (Tr. 47-51, 54-59) Plaintiff thereafter requested and received a de novo hearing by an Administrative Law Judge ("ALJ"), before whom plaintiff appeared and gave testimony on March 27, 2009. (Tr. 20-37) Plaintiff was represented by counsel at the hearing, and testimony was also received from an impartial vocational expert. At the conclusion of the hearing, the ALJ took the case under advisement, until May 8, 2009, when he issued a written decision denying plaintiff's claims. (Tr. 11-19) The decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2011.

2. The claimant has not engaged in substantial gainful activity since January 16, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: carpal tunnel syndrome; and degenerative disc disease of the cervical spine (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can only frequently climb ramps and/or stairs; only occasionally climb ladders, ropes, and/or scaffolds; only frequently balance, stoop, kneel, crouch, and/or crawl; is limited to only frequent reaching above shoulder level with both arms; and must avoid concentrated exposure to vibration.

6. The claimant is able to perform her past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant has not been under a disability, as defined in the Social Security Act, from January 16, 2006 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 13-15, 18)

On September 12, 2009, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1-3), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

The following record review is taken from defendant's response brief, Docket Entry No. 16 at 2-6.

### A. Medical Evidence

Douglas Freels, M.D., an orthopedic surgeon, placed no restrictions on Staggs's ability to work in 2005 despite her complaints of hand and neck pain (Tr. 315-16). Dr. Freels observed a positive Tinel sign and a positive Phalen maneuver in both wrists, indicating bilateral carpal tunnel syndrome (Tr. 316). A prior MRI of the cervical spine showed degenerative changes at several levels resulting in moderate to severe neural foraminal stenosis (Tr. 178, 184). A December 2005 electromyography (EMG) and nerve conduction study (NCS) showed carpal tunnel syndrome in both hands (Tr. 213, 315). Dr. Freels mentioned the option of a carpal tunnel release for both hands (Tr. 315). Staggs elected to undergo this procedure (Tr. 315).

Dr. Freels performed a right carpal tunnel release in January 2006 and a left carpal tunnel release in March 2006; there were no complications during either procedure (Tr. 219-23, 257-58, 313).

Dr. Freels stated in March 2006 that Staggs "[was] doing very nicely" following the right carpal tunnel release (Tr. 251). Staggs reported in late January 2006 that she "[was] not having much pain but just some discomfort" (Tr. 311). Staggs reported only "a little discomfort" the following month (Tr. 310). Dr. Freels observed good range of motion in the fingers and no obvious locking or catching problems (Tr. 310).

Following the left carpal tunnel release, Dr. Freels stated in April 2006 that Staggs could work but she should refrain from doing repetitive work (Tr. 308). Although Dr. Freels referred Staggs to a physical therapist in May 2006, the physical therapist stated that Staggs did not put forth a good effort on testing (Tr. 276-89, 304,307). Dr. Freels observed "some weakness" in grip strength at sessions in June and July 2006 (Tr. 304, 306). Dr. Freels ordered an MRI of the cervical spine in July 2006 because he "wanted to make sure that the neck was not a source of [Staggs's] pain and discomfort that she has in the hand" (Tr. 303-04). Dr. Freels also ordered an EMG/NCS (Tr. 304).

Dr. Freels stated in August 2006 that a functional capacity evaluation showed that Staggs could perform light work (Tr. 303). Dr. Freels stated that the EMG/NCS showed "improvement in [Staggs's] nerves in the wrist and there [was] no evidence of any cut or laceration of the nerve" (Tr. 214-16, 303). The EMG/NCS showed "no electrical evidence to suggest left carpal tunnel syndrome" and only "very mild right median nerve mononeuropathy at or near the wrist consistent with a mild right carpal tunnel syndrome" (Tr. 215). Dr. Freels expected to release Staggs to work the following month (Tr. 303).

4

Staggs informed Dr. Freels in September 2006 that she wanted to return to work, although Dr. Freels was unsure if she could tolerate it (Tr. 302). Dr. Freels stated that the MRI showed "significant osteophytes present at C-4/5 and C-5/6 with posterior impingement with a disk protrusion" (Tr. 302, 317). The protruding disk caused "pressure on that nerve root" (Tr. 317). Dr. Freels referred Staggs to a neurosurgeon or orthopedic spine surgeon for further examination (Tr. 302).

Staggs informed Dr. Freels in October 2006 that she did not return to work because her former employer was laying off workers (Tr. 301). Staggs reported only "occasional" pain and weakness in her fingers (Tr. 301). Dr. Freels thought that Staggs "was going to have to file for disability," even though Staggs was looking for work (Tr. 301).

There is no evidence in the record that Staggs followed up with Dr. Freels since October 2006.

Saul Julio, M.D., a state agency physician, reviewed the documentary evidence in March 2007 and opined that Staggs's impairments did not meet or equal the criteria of a Listing (Tr. 318-25). Dr. Julio further opined that Staggs, despite her impairments, could perform a range of light work (Tr. 319-22).

Jerry Surber, M.D., performed a consultative examination in July 2007 at the request of the state agency (Tr. 326-31). Dr. Surber observed a slightly positive Tinel sign but a negative Phalen sign in both wrists (Tr. 329). Staggs had normal sensation in all of her fingers and was able to oppose both of her thumbs to all of the fingers in the respective hand (Tr. 329). Staggs had no neurological deficits; she had full muscle and grip strength (Tr. 330). Staggs had a normal gait and did not require the use of an assistive device (Tr. 330).

Dr. Surber stated that Staggs had "no limitations regarding the function or

5

mobility of any of her areas of complaint" (Tr. 331). Dr. Surber stated that Staggs "did not demonstrate today any specific weakness in the muscle groups of her arms or her legs and maintains strong 5/5+ grip strengths today, having no areas of decreased sensation to light touch in her hands or her feet" (Tr. 331). Dr. Surber opined that Staggs could perform light work (Tr. 331).

Frank Pennington, M.D., a state agency physician, reviewed the documentary evidence in August 2007 and agreed with Dr. Julio that Staggs's impairments did not meet or equal the criteria of a Listing (Tr. 332-39). Dr. Pennington further opined that Staggs, despite her impairments, could perform a range of medium work (Tr. 333-36).

Dr. Freels was deposed in February 2007 in connection with a workers' compensation claim filed by Staggs (Tr. 340-63). This claim pertained to Staggs's employment as a sewing machine operator for Adams USA (Tr. 343). Dr. Freels stated that Staggs did not report any complaints of neck pain during the sessions with him (Tr. 355). Dr. Freels stated that he advised Staggs to avoid work that required repetitive lifting, gripping, or motions (Tr. 357). Dr. Freels stated that Staggs probably could not return to her work as a sewing machine operator at Adams USA or as car parts production assembler at Hutchinson (Tr. 357-58). Dr. Freels stated that a functional capacity evaluation "was kind of hard to interpret because, according to the therapist who measured it, he didn't think she had a very reliable functional capacity exam" (Tr. 297-99, 358). Dr. Freels expressed no opinion as to whether Staggs could have returned to any of her other prior occupations (Tr. 357-61).

B. Other Evidence

Staggs has a prior work history as a sewing machine operator (semiskilled, light work), cashier (unskilled, light work), and production assembler (unskilled, light work)

6

(Tr. 35, 126-34).

Staggs was laid off as a sewing machine operator for Adams USA in February 2005 (Tr. 316). She started working as a car parts production assembler at Hutchinson in October 2005 (Tr. 126, 316). Staggs expressed a desire in September 2006 to return to work (Tr. 302). The following month, Staggs stated that she did not return to work because "there were some job layoffs" (Tr. 301). A work history report showed that Staggs worked for a brief period in December 2006 as a driver's helper for UPS (Tr. 126-27).

Jo Ann Bullard, M.S., an impartial vocational expert, testified that Staggs could perform her prior occupation of cashier if Staggs were limited to light work that required no concentrated exposure to vibration and no more than frequently climbing ramps and/or stairs; occasionally climbing ladders, ropes, and/or scaffolds; frequently balancing, stooping, kneeling, crouching, or crawling; and frequently reaching above shoulder level with both arms (Tr. 35, 89). Bullard testified that Staggs could not perform her past relevant work as a cashier if she could not complete a full workweek or was limited to occasional reaching (Tr. 35-37).

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)).  Even if the evidence could also support a different conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached.  Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999).

B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3).  In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations.  Claimants with lesser impairments proceed to step four.
>
> 4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age,

education, past work experience and residual functional capacity must be
considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

C. <u>Plaintiff's Statement of Errors</u>

Plaintiff argues for reversal of the agency's decision on four grounds: (1) that her combination of impairments meets, or is equivalent in severity to, the criteria of Listings 1.02, 1.04, and 1.08; (2) that the ALJ failed give good reasons for his rejection of the opinion of treating physician Dr. Freels, in favor of the opinion of consulting physician Dr. Surber; (3) that the ALJ's finding that she could return to her past relevant work as a cashier is not substantially supported, because such work requires a capacity for fine manipulation that she no longer possesses; and (4) that if she had properly been found limited to sedentary work, the applicable Medical-Vocational guideline would have directed the conclusion that she is disabled. The undersigned considers these arguments in turn.

"For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990). Like the determination of whether an impairment meets the requirements of a listing, the equivalence determination must account for all the criteria of the listing, to ascertain whether each medical finding described therein which is absent from the claimant's medical records is fairly represented by a comparable, documented finding of equal medical severity. <u>Id.</u> at 531. Thus, it is not proper to weigh the effects of other, unrelated impairments in considering whether a *nearly* listing-level impairment equals the listed criteria. <u>Id.</u> at 531-32 & nn. 10, 11.

Without giving explicit consideration to any particular listing, the ALJ in this

10

case found that "[t]he claimant does not have the gravity of symptoms nor medical documentation in order to establish an impairment of listing level severity." (Tr. 14) Plaintiff argues that the "injury to her cervical spine, and both of her hands and wrists manifests all the specific medical criteria for Listings 1.02, 1.04, and 1.08." (Docket Entry No. 15 at 8)  Respectfully, the undersigned must disagree.

The pertinent criteria of Listing 1.02 are as follows:

> Major dysfunction of a joint(s) (due to any cause):  Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).  With:
>
> . . .
>
> B.  Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02.  Plaintiff argues that the major dysfunction to the joints of her cervical spine, and resulting inability to perform fine and gross movements with her hands, meet the listing criteria.  However, the record does not establish chronic pain, stiffness, or limitation of motion in plaintiff's cervical joints.  Indeed, she never made any particular complaints to Dr. Freels with regard to her neck, and Dr. Freels only ordered a cervical MRI in order to rule out a neural compressive lesion that would account for the continuing symptoms in her hands.  (Tr. 303-04, 355)  Accordingly, despite the pathology in her cervical spine and involvement of her wrist-hand joints, plaintiff cannot establish

11

disability under Listing 1.02.

Listing 1.04 describes disorders of the spine resulting in compromise of a nerve root or the spinal cord. Plaintiff's cervical spine condition meets these definitional requirements of the listing. However, in order for this condition to be presumptively disabling, the following pertinent listing criteria must also be present in the record: "Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, [and] motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss[.]" 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A). Again, there is no evidence of limitation of motion of the spine, nor of motor loss accompanied by atrophy or reflex loss. Thus, plaintiff's spinal condition, while a severe impairment, falls short of the severity required by the listing.

Listing 1.08 describes, in pertinent part, the disabling condition resulting from "[s]oft tissue injury of an upper or lower extremity, ... under continuing surgical management, as defined in 1.00M, directed toward the salvage or restoration of major function, and such major function was not restored or expected to be restored within 12 months of onset." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.08. Plaintiff's carpal tunnel syndrome is a soft tissue injury, but as pointed out by defendant, the surgical management of that injury can hardly be described as continuing. Plaintiff had carpal tunnel release surgeries in January and March of 2006 (Tr. 222-23, 257-58), on her right and left wrists, respectively, without complication. By August 2006, plaintiff complained only of "hand tingling predominantly at night with decreased grip strength," while neurological testing revealed no abnormalities on the left, and only very minor abnormalities on the right

"consistent with very mild right [carpal tunnel syndrome]." (Tr. 214-16) Dr. Freels' treatment notes and deposition testimony explain that the subjective complaints of pain and weakness in plaintiff's hands do not correlate with her carpal tunnel injury, but were suspected to be neuropathic symptoms resulting from her neck injury. (Tr. 301-04, 359) Accordingly, plaintiff's soft tissue injury does not meet or equal the requirements of Listing 1.08.

Plaintiff next argues that in determining her residual functional capacity, the ALJ erred in rejecting the opinion of her treating physician, Dr. Freels, without giving good reasons in support. A treating source opinion is entitled to controlling weight pursuant to 20 C.F.R. § 404.1527(d)(2) if it is well supported by objective, clinical evidence and not substantially opposed on the record. Even where such an opinion is not entitled to controlling weight, the Sixth Circuit has stated that "in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference. . . ." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 242 (6th Cir. 2007). Accordingly, ALJs must provide "good reasons" for discounting the weight of a treating source opinion. See 20 C.F.R §§ 404.1527(d)(2), 416.927(d)(2); Rogers, 486 F.3d at 242 ("[T]he ALJ must provide 'good reasons' for discounting treating physicians' opinions, reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'") (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5). The Sixth Circuit has described this regulatory requirement as an "important procedural safeguard" that the agency cannot disregard in an *ad hoc* fashion. Bowen v. Comm'r of Soc. Sec., 478 F.3d 742, 747 (6th

Cir. 2007) (quoting <u>Wilson v. Comm'r of Soc. Sec.</u>, 378 F.3d 541, 544 (6th Cir. 2004)).

The ALJ analyzed the opinion of Dr. Freels as follows:

> The undersigned has considered the opinion of treating physician Douglas B. Freels, M.D., who opined that "it would be improbable that (the claimant) would be able to return to the similar kind of job that she previously had" (Exhibit 10F, p. 22). This opinion is not a medical opinion, but rather an administrative finding dispositive of a case, which requires familiarity with the Regulations and legal standards set forth therein. Such issues are reserved to the Commissioner, who cannot abdicate his statutory responsibility to determine the ultimate issue of disability. Opinions on issues reserved to the Commissioner can never by entitled to controlling weight, but must be carefully considered to determine the extent to which they are supported by the record as a whole or contradicted by persuasive evidence (20 CFR 404.1527(d)(2) and 416.927(d)(2); SSR 96-5p). As this opinion is not supported by the record as a whole and is clearly contradicted by the objective clinical findings of another examining physician, Dr. Surber, the undersigned declines to accord it any weight.

The ALJ correctly noted that Dr. Freels' statement that, essentially, plaintiff would likely be incapable of returning to her past relevant work (Tr. 361) goes to the ultimate legal issue of disability, and is thus not a medical opinion subject to controlling weight due to his status as a treating physician. <u>See</u> 20 C.F.R. § 404.1527(e); <u>Allen v. Comm'r of Soc. Sec.</u>, 561 F.3d 646, 652 (6th Cir. 2009); <u>Bass v. McMahon</u>, 499 F.3d 506, 511 (6th Cir. 2007). Furthermore, it appears that the record would undermine the construction of Dr. Freels' opinion as indicating the capacity for less than light work. In late 2006, plaintiff reported to Dr. Freels that she needed to get back to regular duty work and requested that he not place work restrictions on her. (Tr. 302, 357) Also, she reported occasional symptoms of numbness and pain in the fingers, with weakness being her main complaint (Tr. 301), but Dr. Freels described her grip strength as "a little bit weak" (Tr. 302), and her physical therapist

14

noted that grip strength test results were not consistent with her ability to function (Tr. 304), which was reported to include the ability to complete light/moderate home tasks and independence with all activities of daily living (Tr. 285). Finally, on July 18, 2007, the day of plaintiff's consultative examination with Dr. Surber, she displayed bilaterally equal arm strength and full grip strength, with "no limitations regarding the function and mobility of any of her areas of complaint nor in any of her extremities or joints[.]" (Tr. 330) Dr. Surber specifically found that, despite her complaint of weakness in both arms, "[t]he patient did not demonstrate today any specific weaknesses in the muscle groups of her arms or her legs and maintains strong 5/5+ grip strengths today, having no areas of decreased sensation to light touch in her hands or her feet." (Tr. 331) Thus, the ALJ's remarks that Dr. Freels' opinion "is not supported by the record as a whole and is clearly contradicted by the objective clinical findings of another examining physician, Dr. Surber," are good and sufficient reasons for discounting the treating physician's opinion.

Plaintiff next argues that she was improperly found capable of returning to her past relevant work as a cashier "because she cannot perform fine manipulation movements with her hands." (Docket Entry No. 15 at 13) In support of this alleged inability, plaintiff cites Dr. Freels' deposition testimony that, while he did not make record of such restrictions because of plaintiff's fear that they would impede her ability to find a job, he "advised her that she should avoid jobs that do a lot of repetitive lifting, gripping, repetitive motion jobs that might aggravate the carpal tunnel." (Tr. 357)[2] However, it is clear that this advice to

---

[2]A treatment note dated April 13, 2006, contains the following remarks by Dr. Freels:

I had a lengthy discussion with her and answering her questions about

15

avoid repetitive motion jobs does not equate to a total inability to perform fine manipulation. In giving this advice, and in opining that plaintiff would likely not be able to return to the kind of job she had previously worked, it appears that Dr. Freels primarily contemplated such work as plaintiff performed at Hutchenson (Tr. 361), a factory where she worked when she first saw Dr. Freels prior to her carpal tunnel surgery, doing table work including such tasks as pushing foam rubber onto a pipe and squeezing a glue gun and a drill trigger on a repetitive basis (Tr. 30, 128). As to the cashier job, the vocational expert testified that a limitation to only occasional reaching, as indicated in plaintiff's hearing testimony, would preclude the performance of such work, whereas a limitation to frequent reaching would allow such work. (Tr. 35-37) (It may be assumed that such limitations would include handling and fingering, along with reaching, given the expert's reference to all three movements in quantifying the frequency issue. (Tr. 36)) It is unclear whether the repetitive motion that Dr. Freels advised plaintiff to avoid would equate to "constant," "frequent," or "occasional" movements in the vocational parlance utilized in these cases (Tr. 36), but inasmuch as no such restriction was in fact imposed due to plaintiff's desire to potentially obtain a job requiring more than occasional manipulation, and given the other, substantial medical and nonmedical evidence supporting the ALJ's credibility and RFC findings, the

---

> how well it will do in the future and what type of work she is doing is going to re-injure it. We had a lengthy discussion about doing repetitive type work and if possible to rotate jobs with a co-worker so that you are not constantly doing the same type of motion over and over every day because that could lead to another bout of carpal tunnel syndrome. She agreed that she would add some variety into her work so that she won't be doing the same repetitive type of work.

(Tr. 308)

undersigned finds no error in the ALJ's step four finding of plaintiff's ability to perform her past cashier job.

Finally, plaintiff argues that if she were properly found capable of only sedentary work, grid rule 201.10 of the Medical-Vocational guidelines would direct a finding of disability. Be that as it may, the ALJ's finding of plaintiff's RFC for a limited range of light work is supported by substantial evidence as discussed above, and the case was properly decided at step four of the sequential evaluation. Accordingly, this last argument based upon the guidelines applicable at the fifth step of the evaluation is without merit.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED, and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 4th day of January, 2011.

                                                            s/ John S. Bryant
                                                            JOHN S. BRYANT
                                                            UNITED STATES MAGISTRATE JUDGE